**GARRETT FREIGHTLINES, INC., and Rio Grande Motor Way, Inc., Plaintiffs,**

v.

**UNITED STATES** of America and Interstate Commerce Commission, Defendants,

and

**R. A. Gould, Inc., Intervening Defendant.**
Civ. No. 1–69–33.

United States District Court
D. Idaho, S. D.
Oct. 24, 1969.

## MEMORANDUM DECISION AND ORDER

Before JERTBERG, Circuit Judge, TAYLOR, Chief District Judge, and McNICHOLS, District Judge.

Maurice H. Greene, Boise, Idaho, Richard C. Fields, Moffatt, Thomas, Barrett & Blanton, Boise, Idaho, for plaintiffs.

Sylvan A. Jeppesen, U. S. Atty., Boise, Idaho, John H. D. Wigger, Department of Justice, Washington, D. C., Jerome E. Sharfman, Interstate Commerce Commission, Washington, D. C., for defendants.

Jones, Meiklejohn, Kehl & Lyons, Denver, Colo., Raymond D. Givens, Givens & Givens, Boise, Idaho, for intervening defendant, R. A. Gould, Inc.

McNICHOLS, District Judge:

This is an action to annul and set aside a decision and order of the Interstate Commerce Commission (hereinafter "the Commission"). Jurisdiction of this three-judge court exists by way of 28 U.S.C. §§ 1336, 1398, 2284 and 2321–2325; on 49 U.S.C. § 17(9); and on 5 U.S.C. §§ 702–706.

Plaintiff corporations (hereinafter "plaintiffs") are well established motor carriers engaged in interstate carriage of motor freight. Intervenor-defendant, R. A. Gould, Inc. (hereinafter "Gould" or "the applicant") is a small irregular route common carrier of motor freight also having interstate rights.

For some years prior to 1964 Gould had permanent authority to carry general commodities over irregular routes between Salt Lake City, Utah and Rico, Colorado. Gould interlined at Rico with an interlined carrier operating between Salt Lake and Denver, Colorado. For our purposes the principal carrier with whom Gould interlined was Goldstein Transportation and Storage, Inc. (hereinafter "Goldstein").

In the year 1964 Gould applied to the Commission for temporary authority to change his place of interline from Rico to Montrose, Colorado. Simultaneous application for like permanent authority was filed. The temporary authority was granted, but the permanent authority was subsequently denied. The temporary authority expired January 7, 1965.

On November 10, 1965, Gould again applied for and received temporary authority to interline at Montrose. Again application for permanent authority was sought. It is conceded that this second request for permanent authority asked for the identical rights previously denied. After due notice, hearing on the application for permanent authority was held June 30, 1966 before a Joint Board. Plaintiffs and other carriers opposed the petition. On April 18, 1967 the Joint Board issued its report recommending that Gould be granted the authority sought. On August 29, 1967, Review Board No. 2 issued a report and order generally adopting the findings of the Joint Board and granting Gould the

right to change the point of interline to Montrose.

Petitions for reconsideration and for further hearings were duly filed and resisted. On January 28, 1968, Division 1 of the Commission denied the petitions and the Commission thereafter granted the permanent certificate of authority to Gould. This appeal was taken from both the order granting the authority and from the denial of the petitions for rehearing.

Plaintiffs argue that the foregoing presents "a complex and confusing record and variety of intertwined issues", but we have no trouble in perceiving and resolving the problems. When the chaff has been whisked aside, only two issues are to be determined:

1. Have plaintiffs shown that the Commission order granting to Gould a change of interlined point was unsupported by substantial evidence, or was otherwise contrary to law?

2. Have plaintiffs shown that the Commission's denial of a rehearing was an abuse of discretion?

We answer the questions so posed in the negative.

■ In approaching the resolution of an appeal from Commission orders, the scope of court review is extremely limited. Courts are not free to retry the facts of the case. We may only determine whether or not the findings and orders of the Commission are supported by substantial evidence and have been arrived at by proper application of relevant legal standards. On review of a denial of rehearing, we are limited to determining whether or not the court has abused its discretion. All parties recognize these limitations on the authority of the court and citations of statutory or case law precedent would seem redundant.

Having in mind the foregoing premise, we will briefly discuss the reasoning by which we have arrived at a determination that the Commission orders appealed from must be affirmed.

■ The Gould application was for authority to relocate its interchange point from Rico, Colorado to Montrose, Colorado. Permanent authority to interline at Rico had been held for a number of years. In such cases the Commission has fashioned a well established rule to the effect that public convenience and necessity is present where the applicant proves that the change of interline point will provide operating economy, efficiency and/or safety and that the change will not result in a service competitively different from that which could be performed through the existing interline point. Southern California Freight Lines, Ltd., Extension—Sacramento, California, 94 M.C.C. 467 (1964); Blue Ridge Transfer Company, Incorporated, Extension—Roanoke, Va., 92 M.C.C. 463 (1963); Hermann Forwarding Company, Extension—Phillipsburg, N. J., 76 M.C.C. 639 (1958); Anna Bradley, Extension—Thompsonville, Conn., 72 M.C. C. 764; Vollmer Transp., Inc., Extension —Manchester, Conn., 49 M.C.C. 379. No contrary line of authorities has been cited to us and we find none. We adopt this Commission rule as being the applicable legal standard.

■ On the record established before the Joint Board, the Commission found the facts to reflect the following situation:

"Applicant has demonstrated that the relocation of its interchange point from Rico to Montrose will result in operating economy and efficiency. As noted, applicant's proposal will result in savings to applicant of $11.90 to $30.80 each way. Likewise, savings will accrue to the public in that interlining carriers will save some 88 operating miles each way. A reduction in transit times will be a futher operating efficiency which will ultimately redound to the benefit of the public as will the ability to operate over more improved routes covering less steeply graded terrain.

"The interline service performed at Montrose will not result in a service competitively different from that

which can be performed at Rico. Although applicant and its interlining carrier may save as much as 176 miles and 8 hours transit time on operations between Denver and Salt Lake City, this operation, in either time or mileage advantage, will still not equal that which may be performed by protestants. It is therefore apparent that applicant's competitive position will not be enhanced or materially improved to the detriment of protestants. In this proceeding, however, it is not necessary to rely solely upon subjective comparison to reach this conclusion. Inasmuch as applicant has conducted operations since November 1965, using Montrose as an interchange point instead of Rico, such operations may be examined to determine the effect of applicant's operations upon protestants as well as to determine the change, if any, in applicant's own operations. As noted, there has been no material or appreciable change in applicant's service subsequent to the institution of service under temporary authority as compared to service rendered before temporary authority was granted. Likewise, although protestants profess a fear of diversion of traffic, none have shown what, if any, have been the effects upon its operations since applicant instituted operations under temporary authority."

Based on this finding the Commission made legal conclusions:

"We conclude that applicant has demonstrated that the proposed operation would result in operating economy and efficiency which will inure to the benefit of the public; that the proposed service will not be competitively different from that which applicant may now render under its permanent authority; that a grant of the proposed authority will not materially enhance applicant's competitive position; and that protestants will not be materially and adversely affected by a grant of the proposed authority."

These findings are based on substantial and largely undisputed evidence and the conclusions drawn are in accord with the proper legal standard to be applied.

■■ Plaintiffs mount an additional attack on the order granting the change of interline point. They draw attention to the fact that the Commission had previously denied Gould's application for the identical authority to change the point of interline. Plaintiffs emphasize this purported inconsistency and urge that there is an arbitrary and capricious element to the appealed from order. This contention fails for two reasons. Firstly, the principles of res judicata do not apply to Commission rulings. Convoy Company v. United States, 200 F. Supp. 10 (D.Or.1961), affirmed per curiam, 382 U.S. 371, 86 S.Ct. 553, 15 L. Ed.2d 426. Secondly, the factual situation as presented at the two hearings differed in that road conditions had changed, the connecting carrier testified at the second hearing and the experience of the more extended use of the Montrose interchange under temporary authority was available for evaluation. We cannot conclude that the Commission was right the first time and wrong the second time, we must judge the proceedings from which the appeal is taken and judge it by the applicable standards. This is especially true where, as here, the respective records considered by the Commission at the two hearings are not identical. R–C Motor Lines, Inc. v. United States, 241 F.Supp. 124 (M.D. Fla.1965). The alleged inconsistency does not vitiate the order granting the new point of interchange.

Plaintiffs were denied a rehearing by the Commission and allege that in denying the rehearing the Commission abused its discretion. The petition for rehearing had two basic thrusts: (1) that the order granting the authority was not supported by substantial evidence, was contrary to the evidence, and was contrary to the law; and (2) that new evidence proves that Gould only sought the authority obtained so as to traffick in rights contrary to the Com-

mission's policy and contrary to the applicant's evidence adduced before the Joint Board.

We have heretofore disposed of the first of these contentions by deciding that the order of the Commission was based on substantial evidence and a correct application of the law. Obviously we hold that there was no abuse of discretion to be found in this regard.

■ On the question of new or additional evidence of trafficking in rights by Gould, we find the Commission didn't abuse its discretion in refusing to reopen the hearings. The allegation of trafficking was raised at the factual hearing before the Board and considered by the Commission in granting the authority sought. The issue was dealt with in the decision of the Review Board:

"One other matter also requires comment. Applicant entered into a contract in 1963 for the sale of that portion of its operating authority which authorizes the transportation of general commodities with exceptions, between Rico and Salt Lake City. A civil suit has been brought by applicant to obtain specific performance of that contract. This gives rise to a question as to whether applicant is seeking authority in this proceeding for the purpose of subsequent sale or whether applicant intends to operate the authority.

"Applicant has been engaged in interlining operations between Denver and Salt Lake City and professes an intent to continue. There is no evidence that applicant is not sincere in its intentions or that the instant application is merely a guise for trafficking in certificates such as has been condemned by the Commission in the past. However, to assure that a situation is not created whereby applicant might sell a portion of its authority while retaining such authority as would permit it to continue substantially identical operations, a non-severable restriction will be imposed upon the authority granted herein."

Thereafter, in the authority ultimately granted, a non-severable paragraph was included which reads as follows:

"The authority granted herein shall not be severable by sale or otherwise from authority now held by carrier to operate between Rico, Colo., and Salt Lake City, Utah.".

However, plaintiffs offer to prove as part of the petition for rehearing, that within a month after the hearing before the Board, all capital stock of Gould, Inc. was sold to one Earl Buckingham and his wife, major stockholders in United-Buckingham Freight Lines, Inc., a large motor carrier. Plaintiffs further offer to prove that Buckingham also seeks to purchase the control of Goldstein, a connecting carrier with Gould. It is conceded that this purchase of Goldstein's interests cannot be carried out without Commission authority, and that Buckingham has a pending application before the Commission for approval of the same under Section 5 of the Act.

The weakness of plaintiffs' contentions are readily apparent. Firstly, Gould did not sell his rights acquired by the contested order, instead, the entire capital stock of the corporation was purchased. Secondly, the allowance or disallowance of the purchase of Goldstein by Buckingham is before the Commission in a wholly separate proceeding. It was appropriate that the Commission allow that issue to come up in the proper proceeding in the Section 5 petition.

■ The granting or denying of a petition for rehearing is left to the discretion of the Commission and only upon a showing of the clearest abuse of that discretion is a court justified in interfering. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946). We hold that there is no such showing here of an abuse of discretion by the Commission and the denial of rehearing sufficient to justify reversal by this court.

It follows from the foregoing that we must affirm the decision and order of the Commission. This memorandum or-

der will serve as findings of fact and conclusions of law as authorized by Rule 52, Federal Rules of Civil Procedure.

The orders of the Interstate Commerce Commission herein under review are affirmed and the complaint is hereby dismissed.